JINXIANG YUANXIN IMPORT
& EXPORT CO., LTD.,
Plaintiff,

v.

UNITED STATES, Defendant,

and

Fresh Garlic Producers Association, Christopher Ranch, L.L.C., The Garlic Company, Valley Garlic, and Vessey and Company, Inc., Defendant–Intervenors.

Slip Op. 15–22.
Court No. 11–00145.

United States Court of International Trade.

March 23, 2015.

John J. Kenkel, deKieffer & Horgan, PLLC, of Washington, D.C., argued for plaintiff. With him on the brief were Gregory S. Menegaz and J. Kevin Horgan.

Alexander O. Canizares, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant. With him on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Justin R. Becker, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Michael J. Coursey, Kelley Drye & Warren LLP, of Washington, D.C., argued for defendant-intervenors. With him on the brief was John M. Herrmann.

## OPINION

EATON, Senior Judge:

Before the court are the Department of Commerce's (the "Department" or "Commerce") Final Results of Redetermination Pursuant to Remand, dated November 22, 2013. Final Results of Redetermination Pursuant to Remand (ECF Dkt. No. 79) ("Remand Results"). The court remanded Commerce's final determination in *Garlic From the People's Republic of China*, 76 Fed. Reg. 19,322 (Dep't of Commerce Apr. 7, 2011) (rescission of antidumping duty new shipper reviews), and the accompanying Final Bona Fides Memorandum (Dep't of Commerce Mar. 31, 2011) (collectively, the "Rescission"), in which the Department rescinded plaintiff Jinxiang Yuanxin Import & Export Co., Ltd.'s ("plaintiff" or "Yuanxin") new shipper review under the antidumping duty order on fresh garlic from the People's Republic of China ("PRC").[1] *See* Mem. from Mark Hoadley, Program Manager, AD/CVD Operations, Import Administration, to Barbara E. Tillman, Office Director, AD/CVD Operations, Import Administration, PD 130, CD 55 (Mar. 31, 2011), ECF Dkt. No. 31 ("Bona Fides Mem."); Fresh Garlic From the PRC, 59 Fed. Reg. 59,209 (Dep't of Commerce Nov. 16, 1994) (antidumping duty order). Although sustaining Commerce's determination that atypical factors indicative of a non-bona fide sale surrounded Yuanxin's transaction, the court on remand directed Commerce to support its bona fides analysis of Yuanxin's sales price and quantity with substantial evidence. *See Jinxiang Yuanxin Imp. & Exp. Co. v. United States*, 37 CIT ——, ——, Slip Op. 13–77, at 24–25, 2013 WL 3455706 (2013) ("*Yuanxin I*").

In its Remand Results, Commerce continued to find that Yuanxin's sale of single-clove garlic was not bona fide and that plaintiff's new shipper review was properly rescinded. *See* Remand Results at 7. Plaintiff filed comments to the Remand Results, arguing that Commerce's analysis was "severely flawed and not based on substantial evidence," and asked the court to remand this case for a second time. Comments on Final Results of Redetermination Pursuant to Ct. Order 7 (ECF Dkt. No. 84) ("Pl.'s Comments"). Defendant United States ("defendant") and defendant-intervenors, the Fresh Garlic Producers Association and its individual members, Christopher Ranch, L.L.C., The Garlic Company, Valley Garlic, and Vessey and Company, Inc. (collectively, "defendant-intervenors"),[2] filed comments in support of the Department's determination, and urged the court to sustain the Remand Results in their entirety. *See* Def.'s Resp. to Pl.'s Comments on the Remand Redetermination (ECF Dkt. No. 99) ("Def.'s Comments"); Def.-ints.' Responsive Comments on Redetermination Pursuant to Ct. Order (ECF Dkt. No. 96) ("Def.-ints.' Comments"). The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(iii).

For the reasons set forth below, the court holds that Commerce's determination, that Yuanxin's sale was not bona fide, and the resulting rescission of plaintiff's new shipper review are supported by substantial evidence and otherwise in accordance with law. In addition, the court finds that the Department's alternative methodology for analyzing the bona fide nature of Yuanxin's sales price in the Remand Results complies with the court's

---

1. Yuanxin is an exporter of fresh garlic from the PRC.

2. Defendant-intervenors are all producers of the domestic like product. Mot. for Leave to Intervene as of Right 1–2 (ECF Dkt. No. 16).

order in *Yuanxin I.* Thus, the Remand Results are sustained.

## STANDARD OF REVIEW

██ "The court shall hold unlawful any determination, finding, or conclusion found ... to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." *Yantai Xinke Steel Structure Co. v. United States,* 38 CIT ——, ——, Slip. Op. 14–38, at 4, 2014 WL 1387529 (2014) (quoting *Xinjiamei Furniture (Zhangzhou) Co. v. United States,* 38 CIT ——, ——, 968 F.Supp.2d 1255, 1259 (2014)).

## DISCUSSION

### I. BACKGROUND

This matter was originally before the court on Yuanxin's challenge to (1) Commerce's final determination that Yuanxin's sale of single-clove garlic during the period of review, November 1, 2008 through October 31, 2009 ("POR"), was not bona fide, and (2) the Department's rescission of plaintiff's new shipper review. *See* Rescission, 76 Fed. Reg. at 19,322. In the Rescission, Commerce determined that Yuanxin's sale was not bona fide for three reasons: "(1) Yuanxin's sale price [was] so high as to be commercially unreasonable and not indicative of *future* sales, (2) Yuanxin's sales quantity [was] not representative of the garlic industry, and (3) the structure of Yuanxin's U.S. sale [was] of an unusual nature." Rescission, 76 Fed. Reg. at 19,324.

In reaching this conclusion, Commerce noted that Yuanxin[3] made one sale of single-clove garlic to its unaffiliated U.S. customer ("U.S. customer"),[4] a sporting and athletic goods manufacturer, which did not purchase garlic from any other source during or after the POR.[5] Letter from David B. Da, D & B Consultants Co., Ltd., to Secretary of Commerce, U.S. Department of Commerce at 27, PD 44 (June 4, 2010), ECF Dkt. No. 31. After purchasing the single-clove garlic, Yuanxin's U.S. customer immediately resold the merchandise to a U.S. wholesaler[6] that had previously purchased single-clove garlic from another exporter, Jinxiang Hejia Co., Ltd. ("Jinxiang Hejia"),[7] during the prior period of

---

3. Plaintiff Yuanxin was the producer, exporter, and importer of record for its sale. Mem. from Thomas Gilgunn, Program Manager, AD/CVD Operations, Import Administration, to Barbara E. Tillman, Office Director, AD/CVD Operations, Import Administration at 3, PD 79 (Nov. 1, 2010), ECF Dkt. No. 31.

4. Yuanxin's U.S. customer in this transaction was [[*Confidential Data Deleted*]] Mem. from Thomas Gilgunn, Program Manager, AD/CVD Operations, Import Administration, to Barbara E. Tillman, Office Director, AD/CVD Operations, Import Administration at 3, CD 38 (Nov. 1, 2010), ECF Dkt. No. 31.

5. Yuanxin sold [[*Confidential Data Deleted*]] kilograms of single-clove garlic with a total value of [[*Confidential Data Deleted*]], or a weighted-average unit value of [[*Confidential Data Deleted*]] per kilogram, to its U.S. customer. Mem. from Thomas Gilgunn, Program Manager, AD/CVD Operations, Import

Administration, to Barbara E. Tillman, Office Director, AD/CVD Operations, Import Administration at 4, CD 38 (Nov. 1, 2010), ECF Dkt. No. 31.

6. The U.S. wholesaler was [[*Confidential Data Deleted*]]. Bona Fides Mem. at 8.

7. Jinxiang Hejia is a Chinese exporter whose single sale of single-clove garlic was the subject of a new shipper review during the period of review immediately preceding Yuanxin's sale of single-clove garlic that is at issue here. The review of Jinxiang Hejia's sale is "the only other review conducted for a sale of single-clove garlic." *Yuanxin I,* 37 CIT at ——, Slip Op. 13–77, at 8 (citing Fresh Garlic from the PRC, 74 Fed. Reg. 50,952 (Dep't of Commerce Oct. 2, 2009) (final results and final rescission, in part, of new shipper reviews), and accompanying Issues and Decision Memorandum).

review.[8] *See* Bona Fides Mem. at 8.

The Department compared Yuanxin's single-clove garlic sales price to the "U.S. Customs and Border Protection ('Customs') data run containing all entries of merchandise exported to the United States from the PRC during the POR under U.S. Harmonized Tariff Schedule ('HTSUS') [9] category 0703.20.0010 for 'Garlic, Fresh Whole Bulbs,' a category that includes both single-clove and multi-clove fresh, whole garlic bulbs." *Yuanxin I,* 37 CIT at ——, Slip Op. 13–77, at 7–8 (citing Bona Fides Mem. at 4). The Customs data, which represented predominantly multi-clove garlic imports, yielded an average unit value ("AUV") for the subject merchandise.[10] *See* Bona Fides Mem. at 6. In making this comparison, Commerce diverged from its practice in *Jinxiang Hejia Co. v. United States,* an appeal to this Court of a review of the antidumping duty order on fresh garlic from the PRC during the prior period of review, in which the Department had found single-clove garlic bulbs to be "unique," such that a price comparison between single-clove and multi-clove garlic was inappropriate. *Yuanxin I,* 37 CIT at ——, Slip Op. 13–77, at 13 (citing *Jinxiang Hejia Co. v. United States,* 35 CIT ——, ——, Slip Op. 11–112, at 6, 2011 WL 3915675 (2011) ("*Hejia* ")).

In *Yuanxin I,* the court held that (1) Commerce had failed to explain adequately its departure from the practice it had established in *Hejia* of treating single-clove garlic as a unique product and (2) the Department had failed to support adequately its determination that it was appropriate to compare Yuanxin's single-clove garlic sales price and quantity to Customs data on multi-clove garlic sales prices and quantities. *Id.* at ——, Slip Op. 13–77, at 24–25. The court further determined that, "[w]hile Commerce's analysis of Yuanxin's third-country sales was reasonable, its conclusion that Yuanxin's future pricing would necessarily follow that of its third-country sales ...," which fell after the POR, was not reasonable, nor was the conclusion supported by substantial evidence. *See id.* at ——, Slip Op. 13–77, at 18, 25. The court, however, agreed, that Commerce's "conclusion that the circumstances surrounding Yuanxin's transaction were atypical of normal business practices and indicative of a non-bona fide sale was supported by substantial evidence." *Id.* at ——, Slip Op. 13–77, at 25. Thus, "plaintiff's motion for judgment on the agency record [was] granted, in part, and Commerce's final determination rescinding plaintiff's new shipper review [was] remanded." *Id.*

Specifically, the court instructed that, on remand, if Commerce wishe[d] to rely upon a comparison of Yuanxin's sales price to the AUV from the Cus-

8. Jinxiang Hejia's period of review was November 1, 2007 through June 9, 2008. *Jinxiang Hejia Co. v. United States,* 35 CIT ——, ——, Slip Op. 11–112, at 2, 2011 WL 3915675 (2011) (citation omitted).

9. The HTSUS organizes the various classifications of imported goods by headings, which "contain 'general categories of merchandise,' " and subheadings, which "provide a more particularized segregation of the goods within each category." *Deckers Outdoor Corp. v. United States,* 714 F.3d 1363, 1366 (Fed.Cir.2013) (quoting *Orlando Food Corp. v. United States,* 140 F.3d 1437, 1439 (Fed.Cir.

1998)) (internal quotation marks omitted). These headings and subheadings are "harmonized with the internationally-developed HS nomenclature up to the six-digit level, *i.e.,* to the two-digit 'chapter,' the four-digit 'heading,' and the six-digit 'subheading' levels" per the Harmonized System Convention. *Victoria's Secret Direct, LLC v. United States,* 37 CIT ——, ——, 908 F.Supp.2d 1332, 1345 (2013) (citation omitted).

10. The AUV in the Customs data was [[*Confidential Data Deleted* ]] per kilogram. Bona Fides Mem. at 6.

toms data, it must explain its departure from the practice it established in *Hejia*, and demonstrate with substantial evidence (1) that Yuanxin's single-clove garlic is not a unique product when compared to multi-clove garlic, (2) that there is not a distinct market for single-clove garlic, and (3) that factors relating to product uniqueness and distinct market do not affect the price that single-clove garlic commands.

*Id.* In addition, the Department was directed to "take into account [Yuanxin's] arguments relating to *Fish Fillets, Stainless Steel,* and *Wooden Bedroom Furniture,*[11] as well as the evidence relating to the relatively high offer prices for single-clove garlic in India and the high prices for plaintiff's third-country sales." *Id.* at ——, Slip Op. 13–77, at 25–26.

The court further directed that, if, on remand, Commerce were to find a comparison to the AUV to be invalid, it "must use another methodology to determine the commercial reasonableness of Yuanxin's sales price," and that it must, based on the same methodology for its price analysis, determine "a reasonable methodology for examining the quantity of Yuanxin's sale." *Id.* at ——, Slip Op. 13–77, at 26. The Department was also instructed to "reopen the record to solicit information regarding [(1)] whether single-clove garlic is a unique product, [(2)] whether there is a distinct or specialized market for single-clove garlic, and [(3)] whether these facts affect the price that single-clove garlic commands." *Id.* Additionally, the court "ordered that the Department may reopen the record to solicit information for any other purpose." *Id.*

Following the court's order, Commerce reopened the record to allow the parties to submit additional information about the single-clove garlic market. Remand Results at 5. The Department placed on the record publicly available information about single-clove garlic, as well as Commerce's preliminary bona fides analysis and calculation memorandum from its review of a single sale of single-clove garlic made by Jinxiang Hejia during the prior period of review. Remand Results at 5. Defendant-intervenors submitted exhibits related to garlic pricing and marketing, and Yuanxin introduced market and price data. Remand Results at 5. Plaintiff also filed further information to supplement the record, which Commerce rejected. Remand Results at 5, 6.

## II. LEGAL FRAMEWORK

 Upon request, Commerce is required by statute to perform administrative reviews "for new exporters and producers" whose sales have not previously been examined. 19 U.S.C. § 1675(a)(2)(B). Through these new shipper reviews, Commerce's task is to determine whether new exporters and producers, subject to an existing antidumping duty order, are entitled to their own duty rates, and if so, to calculate those rates. *See Hebei New Donghua Amino Acid Co. v. United States,* 29 CIT 603, 604, 374 F.Supp.2d 1333, 1335 (2005).

 In practice, this determination involves an evaluation of whether the transactions under review are "bona fide or commercially reasonable." *Shandong Chenhe Int'l Trading Co. v. United States,* 34 CIT ——, ——, Slip Op. 10–129, at 5,

---

11. According to plaintiff, in each of these three reviews, Commerce had found that the prices, which were higher than the average price for goods under the tariff heading, were justified because each product under review was unique and therefore distinct from other products under the same heading. *Yuanxin I,* 37 CIT at ——, Slip Op. 13–77, at 9 (citing Mem. of Pl. Jinxiang Yuanxin Imp. & Exp. Co., Ltd. in Supp. of Mot. for J. on the Agency R. 28 (ECF Dkt. No. 30)).

2010 WL 4924016 (2010) (citing 19 C.F.R. § 351.214(b)(2) (2009); *Hebei New Donghua*, 29 CIT at 608, 374 F.Supp.2d at 1338). As part of its inquiry, Commerce "applies a 'totality of circumstances test' focusing on whether or not the transaction is 'commercially reasonable' or 'atypical of normal business practices.'" *Hebei New Donghua*, 29 CIT at 610, 374 F.Supp.2d at 1339 (citations omitted).

■ To evaluate whether a sale is "commercially reasonable," Commerce considers "(1) the timing of the sale, (2) the price and quantity[,] (3) the expenses arising from the transaction, (4) whether the goods were resold at a profit, (5) and whether the transaction was at an arm's length basis." *Id.* (citations omitted). In weighing these factors, the Department seeks to determine "whether the sale(s) under review are indicative of future commercial behavior." *Id.* at 613, 374 F.Supp.2d at 1342 (citation omitted). Additionally, "a primary indication that a sale (or series of sales) is not bona fide is evidence that the sales price is unusually high in comparison to the prices of other sales of subject merchandise during the [period of review]." *Zhengzhou Huachao Indus. v. United States*, 37 CIT ——, ——, Slip Op. 13–61, at 7, 2013 WL 3215181 (2013). An unusually high sales price is significant because it may be indicative of a price arrangement made "to avoid the imposition of a significant antidumping duty margin." *Id.* (citing *Jinxiang Chengda Imp. & Exp. Co. v. United States*, 37 CIT ——, ——, Slip Op. 13–40, at 4–5, 2013 WL 1490723 (2013)).

■ In determining whether a sale is "atypical of normal business practices," Commerce looks to all circumstances surrounding the sale. *See Catfish Farmers of Am. v. United States*, 33 CIT 1258, 1261–

62, 641 F.Supp.2d. 1362, 1368–69 (2009). In particular, "[i]f the weight of the evidence indicates that a sale is not typical of a company's normal business practices, the sale is not consistent with good business practices, or the transaction has been so artificially structured as to be commercially unreasonable, the Department [will] find[ ] that it is not a bona fide commercial transaction and must be excluded from review." *Id.* at 1261, 641 F.Supp.2d at 1368 (citation omitted) (internal quotation marks omitted).

### III. THE DEPARTMENT COMPLIED WITH THE COURT'S REMAND ORDER

■ In its Remand Results, Commerce continued to find that Yuanxin's sale of single-clove garlic was not bona fide, primarily for two reasons: (1) Yuanxin's price was "aberrationally high," and (2) atypical factors surrounded Yuanxin's sale. Remand Results at 6. Because the court had already found in *Yuanxin I* that the Department's conclusion that plaintiff's sale was atypical was supported by substantial evidence, Commerce properly declined to reexamine the issue. *See Yuanxin I*, 37 CIT at ——, Slip Op. 13–77, at 25; Remand Results 6.

In reaching its findings that Yuanxin's price was "aberrationally high," the Department ceased to rely on a direct comparison of Yuanxin's sales price to the AUV. Rather, Commerce compared Yuanxin's sales price, price premium, and sales quantity to other prices, premiums, and quantities on the record. Specifically, in analyzing Yuanxin's sales price in the context of other single-clove garlic prices, the Department looked to (1) Jinxiang Hejia's U.S. sales price from the prior period of review, (2) price quotes from exporters in India [12] and the PRC, and (3) U.S. retail prices. Remand Results at 9–11.

---

**12.** Plaintiff objects to Commerce's decision to rely on price offers for Indian single-clove

garlic during plaintiff's POR as part of its analysis on remand. *See* Pl.'s Comments 10–

Thus, on remand, the Department abandoned its reliance on a direct comparison of Yuanxin's single-clove garlic sales price to Customs' AUV data, which was largely comprised of multi-clove garlic prices, finding such a comparison to be inappropriate. Remand Results at 6–7, 8. Instead, the Department compared Yuanxin's single-clove garlic sales price to other prices of single-clove garlic on the record. In addition, it compared the price premium of Yuanxin's sales price over the AUV from the Customs data, to other percentage differences in prices for single-and multi-clove garlic on the record. *See* Remand Results at 6–7, 8. Because the Department used this alternative methodology to determine the commercial reasonableness of Yuanxin's sales price, Commerce correctly reasoned that it no longer needed "to determine whether single-clove garlic [was] a unique product with a distinct market compared to multi-clove garlic" as per the court's instructions in *Yuanxin I*. Remand Results at 8 (citing *Yuanxin I*, 37 CIT at ——, Slip Op. 13–77, at 25). In addition, having abandoned its reliance on a direct comparison of plaintiff's single-clove garlic sales price to the AUV of the Customs data, the Department's analysis is no longer incompatible with its determinations in the three reviews of *Fish Fillets, Stainless Steel,* and *Wooden Bedroom Furniture. See* Remand Results at 8. As such, it was no longer necessary for it to evaluate and consider plaintiff's comments on remand relating to these proceedings as directed by the court in *Yuanxin I. See Yuanxin I,* 37 CIT at ——, Slip Op. 13–77, at 25. Moreover, in accord with the court's order, Commerce ceased to rely on "its conclusion that Yuanxin's future pricing would

necessarily follow that of its third-country sales," which were made after the POR. *See Yuanxin I,* 37 CIT at ——, Slip Op. 13–77, at 18, 25.

The court finds that the Department's new methodology, used in the Remand Results, for determining the commercial reasonableness of Yuanxin's sales price does not conflict with its prior determination in *Hejia* because it does not involve a *direct* comparison of Yuanxin's sales price to the AUV (the AUV reflects primarily average multi-clove garlic sales prices). Previously, in *Yuanxin I,* the court was concerned with Commerce's failure to explain adequately its departure from its practice in *Hejia,* in which it had "found that single-clove garlic was 'unique' and therefore a comparison with entries of multi-clove garlic was not appropriate." *Yuanxin I,* 37 CIT at ——, Slip Op. 13–77, at 13. Because Commerce's new methodology acknowledges that single-clove garlic is a unique product, Commerce's methodology is in accord with the court's remand order.

**IV. REMAND RESULTS—UNCONTESTED DETERMINATION: THE DEPARTMENT'S DETERMINATION REGARDING YUANXIN'S SALES QUANTITY IS SUSTAINED**

In addition to abandoning its comparison of Yuanxin's sales price to the average price in the Customs data, Commerce also declined to compare Yuanxin's sales quantity to the average quantity in the Customs data. Rather, the Department compared Yuanxin's sales quantity to Jinxiang Hejia's quantity in the prior period of review and concluded that "the sales quantity d[id] not provide any indication that Yu-

---

11, 14. Because the evidence that these prices would provide is unnecessary for the court to reach its conclusions, the court need not address Commerce's use of these prices. Further, because the court is not considering the Indian price offers, Commerce's adher-

ence to the court's order in *Yuanxin I,* and its subsequent analysis, with respect to these prices, is immaterial to the court's conclusions. *See Yuanxin I,* 37 CIT at ——, Slip Op. 13–77, at 25–26.

anxin's transaction [was] not *bona fide.*"[13] Remand Results at 15. That is, since the two sales quantities were relatively similar to one another, and Jinxiang Hejia's quantity had been previously found to be bona fide, the Department reasoned that it could not find that Yuanxin's sales quantity was not bona fide.

Because the Department's conclusion is reasonable, and because no party contests this determination, it is sustained. *See* Pl.'s Comments 18; Def.'s Comments 8 n. 1.

## V. REMAND RESULTS—CONTESTED DETERMINATIONS

### A. The Department's Determinations Regarding Yuanxin's Sales Price and Price Premium Are Supported by Substantial Evidence and in Accordance with Law

*1. Commerce's Determination that Yuanxin's Sales Price Was Aberrational and Thus Not Bona Fide Is Sustained*

 The Department began its analysis in the Remand Results by comparing Yuanxin's single-clove garlic sales price to (1) Jinxiang Hejia's U.S. sales price for single-clove garlic, (2) single-clove garlic price quotes from exporters in the PRC, and (3) retail prices for single-clove garlic. Remand Results at 9–11. As discussed below, this analysis demonstrates with substantial evidence that Yuanxin's sales price was aberrationally high.

#### i. Comparison to Jinxiang Hejia's U.S. Sales Price

Aside from Yuanxin's sale under review, Jinxiang Hejia's sale during the prior period of review represents the only actual single-clove garlic sale from the PRC to the United States on the record. In comparing Yuanxin's sale to Jinxiang Hejia's, Commerce found that Yuanxin's U.S. sales price of single-clove garlic was significantly higher than Jinxiang Hejia's price adjusted for inflation from the previous period of review, for the same product sold in the same market.[14] *See* Remand Results at 9. The Department found this price differential to be particularly aberrational based on record evidence that it claims demonstrated that the price of multi-clove garlic decreased between Jinxiang Hejia's period of review and Yuanxin's POR,[15] "suggest[ing] that the market price for garlic in general decreased during this time." Remand Results at 9–10. In other words, Commerce found it unreasonable that, in the context of an overall drop in fresh garlic prices, Yuanxin's product price would so far exceed Jinxiang Hejia's inflation-adjusted price. Remand Results at 9–10.

---

13. Jinxiang Hejia's sales quantity was [[*Confidential Data Deleted*]] kilograms, and Yuanxin's was [[*Confidential Data Deleted*]] kilograms. Remand Results at 14.

14. Specifically, Commerce found that Yuanxin's U.S. sales price of [[*Confidential Data Deleted*]] per kilogram of single-clove garlic was [[*Confidential Data Deleted*]] percent [[*Confidential Data Deleted*]] than Jinxiang Hejia's inflation-adjusted price of [[*Confidential Data Deleted*]] per kilogram, both of which were sold in the same market [[*Confidential Data Deleted*]] apart. Remand Results at 9. Commerce notes that it "has previously found a sale price 30 percent higher than the average of other sales to not be *bona fide.*" Remand Results at 9 n. 35 (citing Uncovered Innerspring Units From the PRC, 76 Fed. Reg. 80,337 (Dep't of Commerce Dec. 23, 2011) (rescission of antidumping duty new shipper review), *aff'd, Foshan Nanhai Jiujiang Quan Li Spring Hardware Factory v. United States*, 37 CIT ——, ——, 920 F.Supp.2d 1350, 1354, 1358 (2013)).

15. Record evidence indicates that the market price for all fresh garlic [[*Confidential Data Deleted*]] by [[*Confidential Data Deleted*]] percent between Jinxiang Hejia's and Yuanxin's periods of review. *See* Remand Results at 9.

Plaintiff objects to this finding, arguing "that there is no record evidence to *not* support a price increase" for single-clove garlic between Jinxiang Hejia's period of review and Yuanxin's POR because there is no evidence of supply and demand factors during those periods. Pl.'s Comments 8.

■ The burden of building the administrative record, however, lies with the interested parties. *QVD Food Co. v. United States,* 658 F.3d 1318, 1324 (Fed.Cir.2011) (citations omitted). Thus, if it believed that the price increase was justified, it was plaintiff's obligation to supply Commerce with a probative source demonstrating that the price for single-clove garlic increased during that time period. Plaintiff's failure to do so leaves the Department without evidence that contradicts the record evidence demonstrating a general price drop in the garlic market.

Moreover, as defendant points out, there is no evidence indicating that Yuanxin's significant price increase soon after Jinxiang Hejia's sale [16] is reasonable. Def.'s Comments 9. Indeed, the record indicates that it is not. First, that Yuanxin's sales quantity is comparable to Jinxiang Hejia's eliminates the size of the sale as a reason for Yuanxin's significantly higher sales price. *See* Remand Results at 10. That is, as Commerce concluded, "had [Jinxiang] Hejia's sale consisted of a significantly larger quantity purchase, it could have, in part, explained [the] differences in per-unit prices." Remand Results at 10.

Yuanxin further claims that "four years [after the end of Yuanxin's POR], retail prices in the U.S., Europe, and Australia of single-clove garlic are extremely high compared to multi-clove garlic." Pl.'s Comments 8. Also, according to plaintiff, Commerce improperly assumed that, because multi-clove garlic prices decreased between Jinxiang Hejia's and Yuanxin's periods of review,[17] single-clove garlic prices must have decreased as well. Pl.'s Comments 8.

These arguments are meritless. That single-clove garlic prices were higher than multi-clove garlic several years after the POR does not speak to whether single-clove garlic prices increased or decreased between Jinxiang Hejia's sale and that of Yuanxin. More importantly, Commerce provided evidence that multi-clove garlic prices decreased following plaintiff's POR:

> The evidence on the record indicates that there was a decline in the price for multi-clove garlic between Hejia's and Yuanxin's [periods of review]. The Department routinely uses broad indicators of price movements in adjusting price information from one period to another when more specific indicators are not available. For example, we often use only the consumer price index ("CPI")— the broadest measure of inflation in a country—to adjust values for specific factors of production. In this case, after applying the CPI, we relied on the measure of price movements most specific to the product under review: the fall of the AUV for multi-clove garlic ... between the Hejia and Yuanxin review periods.

Remand Results at 17. In connection with this finding, Commerce cited evidence demonstrating that "multi-clove and single-clove [garlic] are grown, harvested[,]

---

16. Yuanxin's price is [[*Confidential Data Deleted*]] percent [[*Confidential Data Deleted*]] than the sales price of the same merchandise sold by Jinxiang Hejia just [[*Confidential Data Deleted*]] months earlier. Remand Results at 9.

17. As previously noted, Jinxiang Hejia's period of review was November 1, 2007 through June 9, 2008, and Yuanxin's POR was November 1, 2008 through October 31, 2009.

and sold in the same manner." Remand Results at 19 & nn. 63–64. Indeed, the "record indicates growing single-clove garlic requires the same resources required to grow multi-clove garlic," and "single-clove garlic can simply be the unintentional result of a multi-clove garlic crop receiving inadequate moisture." Remand Results at 19 & n. 64 (citing Mem. from Lingjun Wang, Analyst, AD/CVD Operations, to The File, PD 2 at bar code 3148675–01 (Aug. 6, 2013), ECF Dkt. No. 102–2). The Department further found that producers of single-clove garlic compete with multi-clove garlic producers because both products "are substitutes to some degree." *See* Remand Results at 19. These factors suggest that, contrary to plaintiff's assertions, cost of production cannot account for Yuanxin's sales price and that there exists some possibility for substitution as to use between single-clove and multi-clove garlic.

Also, while not conclusive because of the lapse of time, the Department cited some evidence that single-clove garlic prices fell between 2009 and 2013:

> [S]ales offers for single-clove garlic [ (i.e., the same product as that which was sold by Yuanxin) ] for sale to the United States indicate that while single-clove garlic from the 2009 crop was offered for [[*Confidential Data Deleted*]], in 2013, the same company offered single-clove for as low as [[*Confidential Data Deleted*]] and [[*Confidential Data Deleted*]].... It is therefore reasonable to conclude that similar agricultural products experience similar pricing patterns and trends, rather than move in opposite directions.

Remand Results at 17.

Further, plaintiff contends that "Yuanxin seems to have been the *only* Chinese [single-clove] garlic exporter in its POR," giving it a monopoly in the market and, thus, "monopoly pricing." Pl.'s Comments 9. Based on the differences between monopolistic markets and pure competition, Yuanxin reasons that "prices for single-clove garlic are not likely to rise and fall with prices for multi-clove garlic." Pl.'s Comments 9.

Despite plaintiff's claims to the contrary, the court does not find any record evidence to suggest that Yuanxin enjoyed a monopoly over the U.S. single-clove garlic market during the POR. Rather, plaintiff appears to disprove its own claim that it enjoyed a monopoly on single-clove garlic in the United States. Although it insists that Yuanxin was a monopolist during its POR, as discussed in greater detail below, plaintiff also claims that it was improper for Commerce, as part of its retail price analysis, to compare Yuanxin's sales price to that of Trader Joe's, a major retailer that, according to plaintiff, likely purchased single-clove garlic in significantly larger quantities than that of plaintiff's sale.[18] Pl.'s Comments 11 ("[I]t is reasonable to assume that [Trader Joe's] does not purchase [as few kilograms of single-clove garlic] a year, [as were] sold by Yuanxin."). If plaintiff indeed held a monopoly over the single-clove garlic market

---

18. As part of its retail price analysis, discussed in greater detail below, Commerce compared Yuanxin's sales price to Trader Joe's sales price and found that Trader Joe's retail price was, in fact, lower than plaintiff's export price. *See* Remand Results at 20. Because retail prices are typically higher than export prices as they are further down the distribution chain and reflect a greater number of costs, Commerce found that this price difference was further evidence that Yuanxin's transaction was not bona fide. Remand Results at 11–12. Plaintiff objected to this comparison because, it claimed, Trader Joe's had the ability to keep its costs down by purchasing in greater quantities than Yuanxin sells. *See* Pl.'s Comments 11. Of course, that would not be the case if Yuanxin were the only source of single-clove garlic during the POR.

in the United States during the POR, Trader Joe's could not possibly have purchased more single-clove garlic than plaintiff sold.

### ii. Price Offers from the PRC

In the Remand Results, in addition to Jinxiang Hejia's U.S. sales price from the prior period of review, Commerce looked to price offers for single-clove garlic from exporters in the PRC to the United States. Remand Results at 10. Plaintiff also placed on the record a price for a single reported sale of multi-clove garlic in Japan, as well as its price for a single sale of single-clove garlic in the Netherlands. *See* Remand Results at 24; Pl.'s Comments 2. With respect to the price offers for single-clove garlic placed on the record by plaintiff, the Department observed that a Chinese exporter, Chengwu County Minfeng Fruits & Vegetables Co., Ltd. ("Chengwu County"), offered single-clove garlic at a price range of $0.90 to $1.40 per kilogram during Yuanxin's POR. Remand Results at 10–11. Thus, Commerce determined that Yuanxin's price was significantly higher than the offer prices from the PRC.[19] Remand Results at 11.

Plaintiff insists, without providing a citation for its argument, that Commerce "never uses price offers when actual prices are available," and that the Department has not "demonstrated how these price offers are more relevant than Yuanxin's actual prices to Japan or The Netherlands." Pl.'s Comments 10. Plaintiff further contends that the Department has ignored the prices of Yuanxin's sales to "Japan and The Netherlands, as well as actual prices in the U.S. (and worldwide) four years after the POR, which show that single-clove garlic sells throughout the U.S. at a price generally about 400 percent

of that for multi-clove garlic." Pl.'s Comments 7.

The court cannot credit plaintiff's arguments. Commerce used the price quotes from the PRC to assess whether Yuanxin's sales price was bona fide, not as a source of surrogate values. *See* Remand Results at 23. For this purpose, the price quotes were probative because they were lower than plaintiff's sales price even though, as the Department notes, price quotes are usually "higher than consummated transaction prices [because t]hey represent the seller's starting point, before negotiations with the buyer [have] drive[n] the price down." *See* Remand Results at 23.

As to the sales prices into Japan and the Netherlands, this Court has questioned the reliability of gauging the price of merchandise sold in the United States by comparing it to prices for the same merchandise sold elsewhere, because the market forces and conditions of supply and demand present in the United States differ from those abroad. *See, e.g., Hejia,* 35 CIT at ——, Slip Op. 11–112, at 19 ("[T]he court questions how prices from these [other] markets can serve as probative contrasts. Should Commerce continue to rely upon this rationale on remand, it must justify the comparison of [Jinxiang] Hejia's price with prices that are subject to such disparate market forces."). Here, other, more reliable, information was available on the record, including sales prices and price quotes from Jinxiang Hejia and offers from a Chinese exporter for sales into the United States. Thus, Commerce did not need to rely on sales from the PRC into countries other than the United States. That is, single-clove garlic sales prices and sales price offers to the United States are more representative of the price that the

---

**19.** Commerce found that Yuanxin's price of [[*Confidential Data Deleted*]] was [[*Confidential Data Deleted*]] percent [[*Confidential Data*

*Deleted*]] than the Chinese offer prices. Remand Results at 11.

U.S. market commands than sales into third countries. Further, plaintiff's sale to Japan was of multi-clove, not single-clove, garlic, and for that reason was less probative than the U.S. price offers for single-clove garlic that Commerce relied upon as part of its analysis.[20]

### iii. Retail Prices

Finally, as part of its price analysis in the Remand Results, the Department determined that Yuanxin's sales price was considerably higher than the January 2008 Trader Joe's retail price for single-clove garlic, "despite the fact that the [Trader Joe's] retail price includes additional costs not reflected in Yuanxin's sale price."[21] *See* Remand Results at 12.

According to plaintiff, Commerce makes an "apples-to-oranges" comparison by looking to Trader Joe's single-clove garlic retail price, because, unlike Yuanxin, "Trader Joe's is a huge national chain" with "great bargaining power" that likely purchases single-clove garlic in much larger quantities than the amount sold by Yuanxin. Pl.'s Comments 11. By comparison, it argues, "both Yuanxin and [Jinxiang] Hejia sold in small quantities, and to small downstream re-sellers," which, according to Yuanxin, might explain why Trader Joe's retail price was lower than Yuanxin's sales price. *See* Pl.'s Comments 11.

As an initial matter, plaintiff's argument regarding the quantities at which Trader Joe's purchased its single-clove garlic, and its claim that Trader Joe's possesses significant bargaining power that allows it to purchase single-clove garlic at a much lower price than that at which Yuanxin sold

its single-clove garlic, are mere speculation. That is, there is nothing on the record to support these contentions. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed.Cir.2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1276 (Fed.Cir.2002) (Dyk, J., dissenting) (internal quotation marks omitted))). Moreover, the court further finds plaintiff's argument to be unpersuasive because it ignores the significance of the Trader Joe's price. The Trader Joe's price was noteworthy to Commerce because, despite being further down in the transaction chain, Trader Joe's retail price was still significantly lower than Yuanxin's price. Therefore, even though most retail prices on the record were higher than Yuanxin's, that plaintiff's price was higher than one retailer's price is at least some evidence that the transaction in question was not bona fide. *See* Remand Results at 20–21.

Thus, a comparison of single-clove garlic prices supports Commerce's conclusion that Yuanxin's sales price was aberrational and thus not bona fide.

### 2. Commerce's Determination that Yuanxin's Price Premium Was Not Bona Fide Is Sustained

■■■ After finding that plaintiff's sales price was aberrational when compared to other prices, the Department then looked at the price premium for plaintiff's sales price for single-clove garlic over prices for multi-clove garlic. As part of its analysis, Commerce looked to the price premium, stated as a percentage difference, between the prices of single- and multi-clove garlic,

---

**20.** Notably, despite arguing throughout this proceeding that single-clove and multi-clove garlic prices are not comparable, Yuanxin now argues, in this instance, that Commerce should have relied on the sales prices for multi-clove garlic. *See* Pl.'s Comments 7, 8–9, 10.

**21.** Commerce found that Yuanxin's sales price was [[*Confidential Data Deleted*]] than Trader Joe's January 2008 single-clove garlic price of [[*Confidential Data Deleted*]] per kilogram. *See* Remand Results at 11–12.

for (1) Jinxiang Hejia's U.S. sales price, (2) retail sales prices, and (3) price offers from the PRC. *See* Remand Results at 12. The Department found that, despite "single-clove garlic demand[ing] a higher price than multi-clove garlic in ... the PRC and the United States," Yuanxin's price premium (i.e., the percentage difference between the sales price of its single-clove garlic and prices for multi-clove garlic that entered the United States during the POR) was unjustifiably higher than the other premiums on the record. Remand Results at 12 ("As discussed below, there is evidence on the record that supports the contentions that a premium for single-clove garlic exists. Specifically, we find that single-clove garlic demands a higher price than multi-clove garlic in ... the PRC and the United States. However, we find that any premium that may be charged above the price for multi-clove garlic does not explain the sales price for Yuanxin's [new shipper review] sale."). In other words, although a premium price on sales of single-clove garlic could be explained and supported by record evidence, the size of the claimed premium on Yuanxin's sale could not.

First, Commerce determined Jinxiang Hejia's single-clove garlic price premium above the AUV for multi-clove garlic during Jinxiang Hejia's period of review. *See* Remand Results at 12. The Department then compared that premium with Yuanxin's premium above the AUV during its POR, and reasonably concluded that plaintiff's premium was "aberrationally high." [22] Remand Results at 12. Put another way, by comparing Yuanxin's premium to the calculated premium for Jinxiang Hejia, the Department found that plaintiff's premium

was not in line with Jinxiang Hejia's market-driven premium.

Next, the Department looked to U.S. sales receipts and grocery store photographs from July 2013 that were submitted by Yuanxin on remand. Remand Results at 12–13. Although some of these receipts were illegible, such that the prices could not be determined, Commerce nevertheless used the remaining legible receipts and photographs to find that the highest single-clove garlic retail price of $3.99 per pound was 303 percent higher than the $0.99 per pound retail price for multi-clove garlic. Remand Results at 13. Thus, the Department observed that, compared to this 303 percent premium, "Yuanxin's ... premium for single-clove garlic over the AUV for multi-clove garlic during the POR" was "aberrationally high." Remand Results at 13. Given the difference between Yuanxin's premium and this 303 percent premium, the court cannot credit plaintiff's assertion that the retail premium is evidence that Yuanxin's price was reasonable.

Last, Commerce considered PRC price offers and a news report as additional points of comparison in its price premium analysis. Assuming that Chengwu County (a Chinese exporter of garlic) sold single-clove garlic at its highest advertised asking price of $1.40 per kilogram and sold multi-clove garlic at its lowest asking price of $0.90 per kilogram, the Department found a price premium of 55.56 percent for single-clove garlic. Remand Results at 13. As compared to the AUV for multi-clove garlic during plaintiff's POR, Commerce noted that the Chinese price premium was

**22.** Commerce compared Jinxiang Hejia's single-clove garlic price premium of [[*Confidential Data Deleted*]] percent over multi-clove garlic to Yuanxin's premium of [[*Confidential Data Deleted*]] percent. Remand Results at 12. To derive these price premiums, Commerce (1) calculated the percent difference

between Jinxiang Hejia's single-clove garlic sales price and the AUV during Jinxiang Hejia's period of review, and calculated the difference between Yuanxin's sales price and the AUV during Yuanxin's POR. Remand Results at 21.

"a fraction" of Yuanxin's premium.[23] *See* Remand Results at 13. Moreover, the Department referenced an article from a Chinese financial newspaper that indicated that the single-clove garlic price premium in the PRC in May 2010 was significantly lower than Yuanxin's price premium.[24] *See* Remand Results at 13–14 (citing *China: Garlic Prices Surge Once Again,* FRESHPLAZA, May 5, 2010 at 7, PD 13 at bar code 3150408–02 (Aug. 16, 2013), ECF Dkt. No. 102–13). Thus, the Department concluded that, while single-clove garlic did command a premium in the Chinese market, the premium did not approach that claimed by plaintiff.

Plaintiff objects to defendant's price premium analysis as a whole, arguing that, "[w]hile Commerce states that it is no longer comparing Yuanxin's price to the AUV, it in fact does just that" by calculating price premiums using the AUV. Pl.'s Comments 12.

This argument is unpersuasive. In its Remand Results, Commerce no longer relied on a *direct* comparison of Yuanxin's price to the AUV, instead analyzing price premiums *based on* the AUV. *See* Remand Results at 8, 12. That is, rather than simply comparing Yuanxin's price to the AUV, Commerce now calculates price premiums for single-clove garlic over multi-clove garlic stated as percentages. Given the scarcity of record evidence on average U.S. single-clove garlic import prices both during and outside of Yuanxin's POR, Commerce's comparison of Yuanxin's sales

price to the AUV data in order to determine a percentage price differential does not conflict with the Department's practice, of considering single-clove garlic to be a unique product, established in *Hejia.* Rather, it confirms it. Put differently, Commerce's use of the AUV in this case is not inconsistent with its determination in *Hejia,* where it found that a direct comparison of single-clove garlic prices to the AUV was not probative because the AUV contained mostly multi-clove garlic prices. Here, Commerce looked at various price premiums for single-clove garlic over the AUV, and in so doing, compared the price premium for plaintiff's single-clove garlic to other calculated premiums for single-clove garlic. Accordingly, the court finds that Commerce's methodology is reasonable and that it complies fully with its order in *Yuanxin I. See Yuanxin I,* 37 CIT at ——, Slip Op. 13–77, at 25–26.

Next, plaintiff argues that "[t]he majority of retail prices in the U.S. in 2013, based on actual purchases contained in the remand record," are higher than Yuanxin's price,[25] meaning that there would be "huge profit [margins] for retailers" purchasing from Yuanxin. Pl.'s Comments 11. Thus, plaintiff claims that its price was reasonable because hypothetical U.S. resellers could buy at Yuanxin's price and still make a profit. In addition, plaintiff claims that Commerce found that "Yuanxin ... made [an enormous] percent profit since its price is that much higher than a completely different product, multi-clove garlic." Pl.'s Comments 13.

---

**23.** Commerce found, based on the AUV for multi-clove garlic of [[*Confidential Data Deleted*]] per kilogram, that the Chinese price premium was [[*Confidential Data Deleted*]] percent, which it then compared to Yuanxin's price premium of [[*Confidential Data Deleted*]] percent. Remand Results at 13.

**24.** The article, which quoted the Chongqing Economic Times, a Chinese business newspaper, stated that in May 2010, single-clove gar-

lic had a price premium of 15 percent. Remand Results at 14 (citing *China: Garlic Prices Surge Once Again,* FRESHPLAZA, May 5, 2010 at 7, PD 13 at bar code 3150408–02 (Aug. 16, 2013), ECF Dkt. No. 102–13).

**25.** According to plaintiff, U.S. retail prices in 2013 were approximately $8.80 per kilogram, compared to Yuanxin's price of [[*Confidential Data Deleted*]] per kilogram. Pl.'s Comments 11.

These arguments miss the point. As defendant correctly notes, it appears that Yuanxin conflates "price premium" with "profit." Def.'s Comments 13. For example, although plaintiff repeatedly refers to Commerce's calculation of Yuanxin's profit (i.e., the percentage difference between plaintiff's sales price of its single-clove garlic and the AUV for multi-clove garlic), this value actually refers to plaintiff's price premium above the AUV for multi-clove garlic during its POR. *See* Pl.'s Comments 12–13. Nowhere does plaintiff indicate that it has calculated Yuanxin's profit from its sole sale, nor does it provide data that would enable the court to determine its profit. Further, whether Yuanxin, as the exporter, made a profit is not relevant to the bona fides analysis. Rather, the relevant inquiry is whether the exporter's U.S. customer made a profit. *See Foshan Nanhai Jiujiang Quan Li Spring Hardware Factory v. United States*, 37 CIT ——, ——, 920 F.Supp.2d 1350, 1353 (2013) ("In determining whether a company's sales are *bona fide*, Commerce weighs the totality of circumstances, including such factors as . . . whether the goods were *resold* at a profit . . . ." (emphasis added) (citation omitted) (internal quotation marks omitted)). Here, plaintiff did not place on the record the sales price between the sporting and athletic goods manufacturer (Yu-

anxin's U.S. customer), and that company's purchaser. Thus, although a reseller's profit margin is one factor generally accounted for as part of Commerce's bona fides analysis, the record here did not contain necessary information to permit Commerce to calculate the U.S. customer's profit.

### 3. Conclusion

Based on the Department's comparison of Yuanxin's sales price to (1) Jinxiang Hejia's price, (2) price offers from the PRC, and (3) the Trader Joe's retail price, the court finds that Commerce has demonstrated with substantial evidence that plaintiff's price was aberrational when compared to other prices. In addition, having evaluated Commerce's price premium analysis, the court finds the Department's determination that plaintiff's price premium was not bona fide to be supported by substantial evidence and in accordance with law.

### B. The Department Properly Rejected Plaintiff's Submissions of Additional Information

In its comments, Yuanxin objects to Commerce's rejection of its two submissions, which were not included in the record, one, for being beyond the scope for which Commerce reopened the record,[26] and the other, as untimely. Pl.'s Com-

---

**26.** The record is unclear as to the date Yuanxin submitted the importer documentation. The Department's Remand Results state that the importer documentation was filed on August 16, 2013, which would render Yuanxin's submission timely. *See* Remand Results at 5. The administrative record, however, indicates that the documentation was submitted on August 19, 2013, three days after the deadline, rendering plaintiff's submission untimely. *See* Letter from John J. Kenkel, Counsel for Yuanxin, to Hon. Penny Pritzker, Assistant Secretary for Import Administration, U.S. Department of Commerce at 1, PD 10 at bar code 3150399–01 (Aug. 19, 2013), ECF Dkt. No. 102–10; Letter from Mark E. Hoadley,

Acting Office Director, AD/CVD Operations, to John J. Kenkel, Counsel for Yuanxin, PD 15 at bar code 3150811–01 (Aug. 21, 2013), ECF Dkt. No. 102–15 ("Rejection Letter"). While plaintiff, in its comments on the Remand Results, appears to concede that its submission was untimely, at oral argument plaintiff's counsel stated that the importer documentation was submitted on August 16, 2013. *See* Pl.'s Comments 19. Nonetheless, the timeliness of plaintiff's submission is immaterial because the Department, when rejecting the importer documentation, specified that the information was beyond the purpose for which Commerce had reopened the record. *See* Rejection Letter.

ments 18. Plaintiff argues that Commerce erred in refusing to consider information concerning (1) the industries in which its importer (the sporting and athletic goods manufacturer) operates and (2) its untimely submission of prices of single-clove garlic in the United States. Pl.'s Comments 18, 19. According to plaintiff, Commerce should have accepted these filings because "the record was incomplete without full information required to make a reasoned, reasonable decision, either by Commerce or the Court." *See* Pl.'s Comments 18. With regard to the importer information, which was rejected as "beyond the limited scope for which the Department opened the record," Yuanxin "believes that the [c]ourt prematurely ruled on the importer issue" in *Yuanxin I* because plaintiff had not been asked to submit information on the industries in which the importer operates in the initial new shipper review, and, as a result, had not previously provided it. *See* Remand Results at 5; Pl.'s Comments 20; *Yuanxin I*, 37 CIT at ——, Slip Op. 13–77, at 24, 25. With respect to timeliness, Yuanxin points out that Commerce was granted additional time to file its Remand Results, "[y]et, with all this extra time, Commerce did not grant a single extra day to the parties to supplement the record." Pl.'s Comments 19. Plaintiff also states that it did not request an extension because it was "unaware that [it] was able to collect additional data." Pl.'s Comments 19.

Defendant notes that Yuanxin concedes that it did not request an extension of time and argues that (1) the Department provided parties with "ample time (17 days) to submit new information," (2) Yuanxin "was on notice of the issues to be re-opened as of the [c]ourt's June 18, 2013 remand or-

der," and (3) Commerce properly exercised its discretion to reject untimely submissions. Def.'s Comments 14–15. Defendant-intervenors additionally point out that Yuanxin does not provide an explanation for why it was unable to submit the information in question in a timely manner. Def.-ints.' Comments 12–13.

■■■ The court finds that Commerce acted within its discretion in rejecting plaintiff's filings, both the importer documentation, which was rejected as "beyond the limited scope for which the Department opened the record," and the additional single-clove garlic market and price information, which was rejected as untimely. Remand Results at 5–6. Although in *Yuanxin I*, the court gave the Department the discretion to reopen the record for any purpose, the Department was not obligated to do so with respect to issues the court had already decided. *See Yuanxin I*, 37 CIT at ——, Slip Op. 13–77, at 26. The court ruled in *Yuanxin I* that "Commerce's conclusion that the circumstances surrounding Yuanxin's sale were 'atypical of normal business practice' "—given that "a sporting goods manufacturer acted as a middleman for its sale to the [U.S. w]holesaler, a company that had previously purchased single-clove garlic directly from Hejia"—was reasonable.[27] *Id.* at ——, Slip Op. 13–77, at 24. That being the case, Commerce was under no obligation to accept plaintiff's submission. That is, Commerce was only required to reopen the record for the limited purpose of soliciting additional information about the garlic market, an order with which Commerce complied. *See id.* at ——, Slip Op. 13–77, at 26; Remand Results at 5–6. Information about the operations of plaintiff's importer[28] clearly falls beyond the scope of

---

**27.** It is worth noting that the court found the sale atypical, not that it was atypical for a sporting and athletic goods manufacturer to be dealing in foodstuffs. *See Yuanxin I*, 37 CIT at ——, Slip Op. 13–77, at 24.

**28.** Apparently, plaintiff submitted this information in order to further explain its "importer's background, specifically, the industries in which it operates." Pl.'s Comments 19 (cita-

the court's order and the type of information Commerce solicited upon reopening the record.

Additionally, the Department did not abuse its discretion in rejecting the market and price data that Yuanxin filed nine days after the submission deadline. The deadline with which plaintiff failed to comply pertained to the submission of new "information regarding whether single-clove garlic is a unique product, whether there is a distinct or specialized market for single-clove garlic, and whether these facts affect the price that single-clove garlic commands." *See Yuanxin I,* 37 CIT at ——, Slip Op. 13–77, at 26. Plaintiff was on notice as of June 18, 2013, with the publication of *Yuanxin I,* that it would have the opportunity to submit new information concerning the single-clove garlic market to supplement the record. *See id.* at 25–26. Although plaintiff insists that the Department should have voluntarily afforded it an extension of time to submit this information (i.e., until August 30, 2013), it has offered no reason for the delay and why it was unable to comply with Commerce's seventeen-day window for submissions. *See* Remand Results at 25 ("The Department provided parties with 17 days to submit new information plus an additional five days to submit rebuttal information. Moreover, the Department was compelled to re-open the record as a result of the [c]ourt's remand on June 18, 2013, in which the [c]ourt clearly identified the evidentiary issue at stake: whether substantial evidence indicates single-clove and multi-clove garlic are distinct products. Therefore, parties had more than six weeks to gather relevant evidence and 22 days to place it on the record."). In addition, plaintiff has provided no explanation as to why it did not seek, as it could have, an extension from the Department at the time. *See* 19 C.F.R. § 351.302.

Thus, having already found that Commerce complied in accordance with the court's order, the court holds that the Department acted within its discretion in rejecting plaintiff's untimely submission. *See CEMEX, S.A. v. United States,* 19 CIT 587, 597–98, 1995 WL 251561 (1995) (citations omitted).

### CONCLUSION

Based on the Department's examination of the totality of the circumstances and on the foregoing, it is hereby

ORDERED that the Department of Commerce's Final Results of Redetermination are sustained. Judgment will be entered accordingly.

---

tion omitted). Plaintiff insists that this documentation would have demonstrated that the

importer operated in the food industry. *See* Pl.'s Comments 19–20.